UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-446 (KMM/SGE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S TRIAL BRIEF** |
| v. | ) | |
| | ) | |
| FIROMSA AHMED UMAR, | ) | |
| | ) | |
| Defendant. | ) | |

At trial, the United States will prove that the defendant threw flaming glass bottles at Fletcher's Ice Cream & Cafe on both October 19 and October 20, 2025. The bottles were improvised incendiary bombs commonly known as "Molotov Cocktails," which are bottles filled with fuel that ignites, explodes, and spreads fire when thrown. Under federal law, these are regulated destructive devices. The defendant was caught on surveillance video and was later arrested with a gas can, a lighter, and a glass bottle in his car. Included in this memorandum are a summary of the facts the Government expects the evidence will establish at trial, a summary of the categories of evidence, an overview of the government's motions in limine, and various potential evidentiary issues.

## I.    THE CHARGES

Defendant Firomsa Umar is charged by Indictment with four counts: (1) Arson and Attempted Arson on October 19, 2025, in violation of 18 U.S.C. § 844(i); (2) Possession of Unregistered Destructive Device on October 19, 2025, in violation of 26 U.S.C. §§ 5861(d) and 5871; (3) Attempted Arson on October 20, 2025, in violation of 18 U.S.C. § 844(i); and (4) Possession of an Unregistered Destructive Device on October 20, 2025, in violation of 26 U.S.C. § 5861(d) and 5871. The case is set for a jury trial on Monday, April 6, 2026, in Courtroom 14W in Minneapolis.  The Government estimates that its case-in-chief will take approximately 2 days. The Government will be represented at trial by AUSAs William Mattessich and Jeanne Semivan.

## II.    THE ANTICIPATED FACTS AT TRIAL

Firomsa Ahmed Umar threw a homemade destructive device at Fletcher's Ice Cream & Cafe, in Minneapolis, twice: the night of October 19, 2025, and the afternoon on October 20, 2025. He made each device out of a glass bottle filled with Styrofoam and gasoline. He drove to the attacks in a blue Honda Odyssey minivan. Later in the day on October 20, he was arrested in that minivan. He was wearing the same clothes he had worn in the afternoon, and he had with him a red gas can, a lighter, and a glass bottle.

2

### A. Fletcher's Ice Cream & Cafe

Fletcher's Ice Cream & Cafe is a commercial business that buys and sells goods in interstate commerce. It is located at 306 Hennepin Avenue, Minneapolis. Above the front window, Fletcher's displays a large, rainbow-colored flag that is commonly understood to show support and solidarity for the LGBTQ+ movement. Fletcher's is near a number of other businesses and restaurants, some of which have surveillance cameras.



*Fletcher's Ice Cream & Cafe*

### B. October 19, 2025 Arson and Attempted Arson

At approximately 10:30 p.m. on October 19, 2025, the defendant drove to Fletcher's in a blue minivan with a sticker in the back window. He parked

across the street in the parking lot of Surdyk's Liquor and Cheese Shop ("Surdyk's"), a commercial business. He crossed East Hennepin Avenue holding a Molotov cocktail, which he lit as he crossed the street towards Fletcher's. He then threw the device at the Fletcher's storefront. Afterwards, he ran back across the street to the minivan and drove off.



*Umar Crosses the Street and Lights a Molotov Cocktail*



*The Molotov Cocktail Hits Fletcher's*

Immediately after Umar threw the device at Fletcher's, the owner and a friend arrived at the store. They found broken glass on the ground and visible charring of a chair near the front. They then spoke to the Minneapolis Police who arrived shortly after.

Investigators, including Minneapolis Police and a Minneapolis Fire Inspector, arrived to find a broken window, clear glass fragments, and a piece of cloth. The defendant's device had broken through the front window into the store. The air smelled like gasoline. The sidewalk in front of the store was discolored and charred. The investigators collected the glass fragments and the cloth, all of which were provided to ATF for investigation.

## C.    The October 20, 2025 Attempted Arson

On October 20, 2025, the defendant returned to Fletcher's in the afternoon to throw another Molotov Cocktail at the store. This time, he parked his minivan in the bus lane on East Hennepin Avenue. He stood in front of the minivan, lit the Molotov Cocktail, and threw it at Fletcher's as bystanders crossed in the crosswalk behind him. The lit cloth fell out of the device after it was thrown, landing on the sidewalk. The bottle did not ignite, but broke the front window that had just been boarded up from the previous night's attack.



*October 20, 2025: The Defendant Throws the Second Molotov Cocktail*

Witnesses saw the defendant and heard the crash as he threw the Molotov Cocktail. Although no one could identify the defendant, eyewitnesses were able to generally describe him and the clothes he was wearing. One witness, who watched the defendant's act, used a cell phone to take a photograph of the defendant's minivan:

 

*A Witness's Photograph of the Defendant's Minivan*

The minivan was a blue Honda Odyssey that matched the van visible on surveillance footage from the previous night's incident. The witness's photograph was clear enough to capture the license plate.

Minneapolis Police arrived a second time to investigate the incident. They found pieces of broken green glass, a piece of cloth, and charring on the sidewalk. After interviewing witnesses, they searched Minnesota vehicle databases for the minivan's license plate. The defendant was the registered owner.

### D.    Umar's Arrest Later in the Day on October 20, 2025

Minneapolis Police officers used the license plate number from the eyewitness photograph to track the suspect from the October 20 attack. Based on the similarities in methods and the target for both incidents, the officers

suspected both attacks were committed by the same person. At approximately 4:25 p.m., Officers found the defendant's blue Honda Odyssey at 4th St. SE and 16th Ave. S. in Minneapolis. The police stopped the defendant and arrested him.



*October 20, 2025: Defendant's Outfit at Arrest*

When he was arrested, the defendant was wearing the same outfit that he appeared to be wearing during both attacks. He asked for a lawyer and did

not make any statements to police. On October 23, 2025, in a search of the car, police found a gas can, a lighter, and a glass bottle filled with Styrofoam.

## III.    THE GOVERNMENT'S EVIDENCE

The government's evidence at trial will broadly consist of the below categories. The government reserves the right to present additional evidence as disclosed in its Exhibit List.

### A.    Surveillance Footage

At trial, the government will show surveillance footage that officers recovered while investigating the two incidents. Both incidents were caught on camera. One source of video was the CCTV system at Surdyk's, which sits directly across the street from Fletcher's. On October 19, 2025, the camera from Surdyk's showed the defendant park his minivan in the parking lot before lighting his destructive device and walking across the street to throw the device at Fletcher's. A large, bright flame is visible in the center of the footage. On October 20, 2025, the camera from Surdyk's shows the defendant stop in the bus lane across the street before lighting and throwing a second Molotov Cocktail at Fletcher's.

A second source of footage was the building two doors to the east of Fletcher's on East Hennepin Avenue. That footage clearly captured the attacks on both October 19 and October 20, 2025. The October 20 footage shows the defendant park the minivan before lighting a destructive device and hurling it

at the Fletcher's storefront. Flames and the defendant's clothing are clearly visible.

### B.    Eyewitness Testimony

The government will call eyewitnesses to testify. One eyewitness arrived just after the October 19, 2025, incident, and discovered broken glass and fire damage. Another eyewitness will testify that at the time of the October 20, 2025, incident, he heard a crash, saw a person wearing clothing that matched the defendant's run into the blue Honda Odyssey, and took a photograph of the Odyssey as it drove away. In addition, the Minneapolis Fire Department investigators—Simmonds and Graham—will both testify to their firsthand observations and impressions in addition to their expert opinions. Finally, the officer who arrested the defendant at the October 20, 2025, traffic stop, will testify about his observations in the defendant's car when he was pulled over.

### C.    Expert Testimony

Four expert witnesses will testify. Two of these expert witnesses will be Minneapolis Fire Department investigators, whose testimony will chiefly focus on their observations but may also include opinions based on their qualifications as fire investigators. In particular, they will discuss their opinions on the damage and charring from the incidents. One investigator responded to the October 19, 2025, incident, and the second responded to the October 20, 2025 incident.



*October 19, 2025: Damage to Window from First Device*



*October 20, 2025: Damage to Window and Charring from Second Device*

The next two expert witnesses will be ATF experts who conducted laboratory testing on the two destructive devices. First, an ATF Forensic Scientist from the laboratory in Amondale, Maryland, will describe the testing she conducted on glass fragments that were recovered from the scene. This testing revealed that there was accelerant on the evidence. Second, a Destructive Device Examiner from the laboratory in Huntsville, Alabama, will testify to his examination of the devices recovered from the October 19 and October 20 incidents. He will testify that based on the design of the devices and the presence of accelerant, these devices qualify as improvised incendiary bombs pursuant to 26 U.S.C. § 5845(f) and would be regulated in accordance with federal firearms laws.

### D.   Phone Extraction Showing the Defendant's Location

Law enforcement performed a forensic extraction of the defendant's phone. The extraction allowed investigators to review GPS location data from the phone for October 19, 2025, and October 20, 2025. The location data showed that the defendant's phone was at various locations around Downtown Minneapolis and Northeast Minneapolis around the time of both incidents. The location data will be presented as evidence that is self-authenticating pursuant to a signed certificate under Federal Rule of Evidence 902(14). As a result, the data will be presented through testimony from the case agent rather than through the individual who performed the extraction.

### E. Physical Evidence

The government will offer physical evidence of the destructive devices and the defendant's intent to create them. This will include glass fragments recovered from October 19 and October 20. In addition, the government will offer the gas can, the lighter, and the Styrofoam-filled bottle that were recovered from the minivan on October 23. These items are available for the defendant's inspection.

### F. Photographs

The government will show a number of photographs showing the location of Fletcher's and the damage from both attacks. The government will also introduce a photograph of the blue Honda Odyssey driving east on East Hennepin Avenue following the attack on October 20, 2025.

## IV.   GOVERNMENT'S MOTIONS IN LIMINE

### A. Motions Concerning Self-Serving Hearsay, Sequestration, References to Punishment, and Jury Nullification (MILs No. 1-4)

The Government has filed five motions in limine addressing several matters that are standard requests prior to trial, with the goal of reducing disputes in front of the jury. The Government rests on the points and authorities set forth in that filing.

## V.   OTHER EVIDENTIARY MATTERS

### A. Self-Authenticating Records

On March 18, 2026, the Government notified the defense regarding its intention to offer evidence from the extraction of the defendant's phone as a self-authenticating record under Federal Rule of Evidence 902(14). The Government has not received any objection from the defense to this course of action. The parties continue to meet and confer about ways to streamline the presentation of evidence at trial.

### B. Rule 404(a) and Impeachment Evidence

The government has previously provided notice that it did not seek to introduce evidence pursuant to Rule 404(b). In the event the defendant chooses to testify, however, the government reserves the right to introduce evidence pursuant to Rule 404(a)(2)(A) to rebut the defendant's testimony, should he offer evidence of a pertinent character trait. The government may also introduce such evidence as extrinsic evidence to impeach the defendant's testimony. Specifically, the government may seek to introduce evidence that the defendant was involved in an incident on September 17, 2025, in which he spraypainted graffiti including the words "gay" and "fag" with a circle around them and crossed out.

### C. Alibi, Insanity, and Public Authority Defenses Precluded

On March 2, 2025, counsel for the government asked counsel for the defendant to provide notice if the defendant intended to offer a defense based on Rule 12.1 (Alibi), Rule 12.2 (Insanity), or Rule 12.3 (Public Authority.) The

defendant confirmed that he did not intend to offer evidence supporting any of those defenses. As a result, the government will object to evidence or testimony that appears to show an effort to assert one of those un-noticed defenses.

Dated: March 25, 2026                     Respectfully submitted,

                                          DANIEL N. ROSEN
                                          United States Attorney

                                          */s/ William C. Mattessich*
                                          WILLIAM C. MATTESSICH
                                          Assistant U.S. Attorney
                                          JEANNE D. SEMIVAN
                                          Special Assistant U.S. Attorney

15